# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EUROPEAN ADOPTION CONSULTANTS, INCORPORATED, 614 West Superior Ave, Ste. 800 Cleveland, Ohio 44113 | ) ) ) ) ) ) | |
| Plaintiff, | ) | Civ. No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL RICHARD POMPEO, in his official capacity as Secretary for the United States Department of State 2201 C Street, NW Washington, D.C. 20520 | ) ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff European Adoption Consultants, Incorporated ("EAC") seeks to set aside the unlawful temporary debarment imposed on it on December 16, 2016 by John Kerry, predecessor to Defendant Michael Richard Pompeo, in his official capacity as Secretary of State (the "Department" or "DOS"). The debarment constitutes final agency action that is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, contrary to law and regulation, in violation of the Intercounty Adoption Act, 42 U.S.C. §§ 14901 *et seq.* and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action seeks judicial review of, and to set aside, final agency action.

2. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because this is the District in which Defendants' principal place of business is located and it is where the debarment decision was issued.  Venue is also proper under 42 U.S.C. § 14924(d).

## PARTIES

3. Plaintiff, EAC, is an Ohio non-profit corporation.

4. Defendant, the Department, is an agency of the United States government with headquarters at 2201 C Street, NW, Washington, D.C. 20502.

## STATEMENT OF FACTS

5. EAC is an Ohio not for profit corporation with its principal place of business in Strongsville, Ohio, until March 2017.

6. Founded in 1991, EAC was until December 16, 2016 one of the largest, if not the largest, international adoption agency in the United States and since its founding, completed over 8,000 international adoptions for families across the United States.

7. In addition to its main office in Strongsville, Ohio, at the time of its debarment, EAC had offices in New York, and Florida and operated international adoption programs in China, Poland, India, Colombia, Bulgaria, Uganda, Ukraine, the Democratic Republic of the Congo, Honduras and Haiti with staff in many of those countries.

8. The United States is a party to The Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption (the "Hague Convention") and pursuant to participation under the Hauge Convention, Congress enacted the Intercountry Adoption Act of 2000 (the "IAA"), 42 U.S.C. § 14901, *et seq.*

9. The Department promulgated regulations implementing the IAA in 22 C.F.R. Part 96 (the "Regulations").

10. The Department designated the Council on Accreditation, 45 Broadway, 29th Floor, New York, New York ("COA") as an accrediting entity under the IAA to accredit adoption agencies in the United States that provide adoption services in connection with international adoptions.

11. Pursuant to its designation by the Department as an accrediting entity, COA adopted its Hague Accreditation and Approval Policies & Procedures Manual (the "COA Manual"), Part X(B) for purposes of regulating and accrediting agencies in the United States that provide adoptions services in connection with intercountry adoptions.

12. On March 27, 2008, COA issued a Certificate of Accreditation confirming that EAC was in substantial compliance with the Regulations and was "Hague Accredited" to provide adoption services in connection with adoptions under the Hague Convention for a period ending on March 31, 2012, which accreditation was renewed in April, 2012 and again in April, 2016 for a period ending on April 30, 2020.

13. The Department is authorized to temporarily and permanently debar accredited adoption agencies under 22 C.F.R. § 96.85, if it finds that (1) there is substantial evidence that accredited agency is out of compliance with the standards in 22 C.F.R. 96, subpart F of the Regulations; and (2) that there has been a pattern of serious, willful, or grossly negligent failures to comply, or other aggravating circumstances indicating that continued accreditation or approval would not be in the best interests of the children and families concerned.

14. On December 16, 2016, without any prior notice or opportunity to be heard, the Department issued a Notice of Temporary Debarment (the "Notice") temporarily debarring EAC for a period of three (3) years, canceling its accreditation to provide adoption services in connection with adoptions under the Hague Convention and requiring EAC immediately to cease and desist from engaging in intercountry adoptions. The Notice contains confidential information

about adoptive parents and children and will be filed as Exhibit A to this Complaint with a motion for leave to file under seal in accordance with Local Rule 5.1(h).

15. The Department issued the Notice based on its determination of alleged violations of the Regulations and section 404(a) of the IAA supported by information it received regarding approximately ten adoption cases in Poland, Uganda, and the Democratic Republic of the Congo.

16. The Notice put an immediate stop to EAC adoption activities and effectively put EAC out of business, forcing it to shut down all operations and terminate its employees.

17. Because of the debarment set forth in the Notice, EAC was required to stop all work on active international adoptions, including cases where adoptive families were only waiting for paperwork to be completed to take their newly adopted children home and in several cases where adoptive families were already in-country to complete their adoptions, causing enormous disruption, heartache and considerable expense for adoptive families.

18. On March 14, 2017, pursuant to the provision of the Notices and the consent of the Department, EAC filed a timely opposition to the Notice and the temporary debarment of EAC and requested a hearing.

19. EAC was not provided with an opportunity to participate in the selection of a hearing officer for the requested hearing and subsequently, the Department selected and appointed as Hearing Officer, Katie Einspanier, an Attorney-Adviser employed by the Department's Office of the Legal Adviser (the "Hearing Officer").

20. Because the Department had no rules of procedure for an evidentiary hearing, the Hearing Officer was tasked with establishing rules of procedure, discovery and evidence, conducting a

hearing and preparing proposed findings of fact and conclusions of law for review by the Assistant Secretary of State for the Department's Bureau of Consular Affairs.

21. In late June 2017, the Department and EAC submitted pre-hearing written submissions to the Hearing Officer and exchanged documents and in late October, just before the start of the hearing, the Department produced a large volume of additional documents containing some of the most relevant information in this case.

22. The written submission by the Department (the "Written Submission") contained approximately 94 factual allegations upon which the Department based approximately 15 distinct violations of the Regulations.

23. A hearing was held at the Department's offices in Washington D.C. on October 23 – 26, 2017 (the "Hearing").

24. The Hearing Officer issued her findings of fact and recommendation on December 12, 2017 (the "Decision"), recommending to the Secretary of State "that you uphold the December 16, 2016 debarment of European Adoption Consultants, Inc. on the findings of fact and reasoning provided" in the Decision. A redacted version of the Decision is attached as Exhibit B.

25. On or about December 12, 2017 Assistant Secretary of State for Consular Affairs, Carl Risch, approved the Decision, and therefore, the Decision represents all of allegations and support upon which the Department relies to maintain the debarment of EAC.

26. The Decision found that the Department failed to meet its burden of proof on approximately 80 of the approximately 94 factual allegations put forth by the Department in the Written Submission as grounds for EAC's debarment as well as a substantial portion of the alleged violations of the Regulations relied upon as grounds for debarment as set forth in the Notice and the Written Submission. The Decision contains confidential information about adoptive

parents and children will be filed as Exhibit B to this Complaint with a motion for leave to file under seal in accordance with Local Rule 5.1(h).

27. Despite these findings, the Decision affirmed the December 16, 2016 Notice, finding sufficient evidence to support the debarment.

28. The Decision to debar EAC is based entirely on alleged violations of the U.S. Code and the Regulations with regards to adoptions in Poland, Texas and Uganda.

<u>Facts Related to Adoption in Poland</u>.

29. The Department's decision with respect to adoption activities in Poland is based on the adoption of a four-year-old girl named M1 ("M1") in Poland by Gregory R and Anna R, (the "R Parents").

30. In 2015, the R Parents, U.S. citizens and prospective adoptive parents, were interested in adopting children from Eastern Europe and retained EAC to assist them in their efforts.

31. EAC identified two sisters living together in a Polish orphanage who were eligible for an intercountry adoption. Subsequently, the R Parents expressed an interest in the two girls as potential adopted children and traveled to Poland in May 2015 to meet the two girls M1 and her three-year-old sister M2 ("M2").

32. Under Polish law, at an initial hearing, the Polish court grants permission for prospective adoptive parents to live with the child daily for a two to four-week mandatory "bonding period." EAC provided counseling and social services to the families and the children during the bonding period.

33. In May 2015, a Polish judge granted the R Parents temporary custody of M1 and M2, and the girls began living with the R Parents in Poland for the "bonding period."

34. Under Polish adoption law there is a "Final Hearing" at the end of the bonding period where a judge decides whether to grant the adoption and full custody to the prospective adoptive parents. If the court approves the adoption, it issues an order approving the adoption, which is followed by a 21-day appeal period that may be shortened at the court's discretion. There is no further scheduled court proceeding relating to the adoption.

35. The Final Hearing for the adoption of M1 and M2 by the R Parents was held on June 12, 2015 wherein the court issued an order approving the adoption and set an appeal period to expire on June 26, 2015, meaning that unless an appeal was filed by June 26, 2015, M1 and M2 would automatically become the adopted children of the R Parents on June 27, 2015 by operation of law.

36. Gregory R returned to the United States after the June 12, 2015 Final Hearing while Anna R stayed with M1 and M2 in Poland pending expiration of the appeal period. Gregory R planned to return to Poland in July to escort Anna R and their two adopted children, M1 and M2, to their home in Utah, USA.

37. After the Final Hearing and after Gregory R returned to the United States, but during the 14-day appeal period, the R Parents began having concerns about their ability to parent M1. These concerns were first reveled in an email dated June 21, 2015 from Anna R to EAC's Executive Director Margaret Cole.

38. In her message, Anna R expressed concerns about adopting M1 stating, "Our temperaments together are toxic ... and I fear it is also having a very negative impact on [M2] as well" and she indicated that the R Parents had decided not to adopt M1.

39. Following its standard protocol in these circumstances and in accordance with §96.50I, EAC immediately retained a certified social worker to consult with Anna R.

40. That certified social worker, Betty Wolf ("Ms. Wolf"), interviewed Anna R by telephone from the United States on the evening of June 26, 2015, U.S. Central Time.

41. In the interview, Anna R told Ms. Wolf that the circumstances with M1 had improved since June 21; that she had not made a final decision about adopting M1; that she was still "struggling" with the decision; and that "she would like for [her husband, Greg] to return and observe [the two girls] together for a few days before deciding what they feel will be the best plan for their family," but at that time Gregory R was not scheduled to return to Poland until early July.

42. Ms. Wolf presented several options to Anna R, including the option of returning to the United States with M1 and placing her in temporary custody or "respite care" with a U.S. family while they decided whether to keep M1 or seek new adoptive parents for M1 in the United States.

43. In their conversation, Anna R advised Ms. Wolf that Anna R was relieved that she would not have to decide what to do with M1 until after they returned to the United States explaining to Ms. Wolf that "for the first time in five weeks she felt hope and relief that they do not have to make this major life decision prior to leaving Poland."

44. In an email dated June 26, 2015, Anna R stated "I looked up respite care for fostering in Utah and I need to learn more. My heart is just broken about placing her temporarily. I know there are laws to follow, but I would be happy to take her to a potential family out of Utah for a while to get her settled and comfortable."

45. As of June 27, 2015, the R Parents had not relinquished custody of M1 and had not decided to dissolve their adoption of M1.

46. It is not disputed that on and after June 27, 2015 M1 was the lawfully adopted child of the R Parents. The R Parents were thereafter free to take M1 home with them, to place her in respite care or to relinquish their parental rights and place her for adoption with another family.

The Adoption of M1 in Texas.

47. The Department's decision with respect to adoption activities in Texas was based on the subsequent adoption of M1 in Texas, after she became a U.S. citizen, by two U.S. citizens, John Scott Tufts and Georgiana Tufts of Denton Texas (the "Tufts Family").

48. In early July, the R Parents proceeded to the U.S. Embassy in Warsaw and obtained U.S. visas for M1 and M2 and on July 3, 2015 flew to the United States with M1 and M2.

49. If M1 was not already a U.S. citizen when her adoption by the R Parents was finalized in Poland, at the latest, M1 became a US citizen by operation of law at the time her plane landed in the United States on July 3, 2015.

50. On July 4, 2015 the R Parents signed parental affidavits for temporary custody and powers of attorney placing M1 in temporary "respite care" with the Tufts Family.

51. Subsequently, the R Parents decided to relinquish their parental rights for M1 for the purposes of allowing her to be adopted by the Tufts Family.

52. On February 24, 2016, more than seven months after M1 entered the United States and began residing with the Tufts Family in Texas, the District Court for Tarrant County, Texas recognized the relinquishment of parental rights for M1 by the R Parents and granted a decree of adoption of M1 to the Tufts Family.

53. Approximately six months later and over a year after M1 was in the custody of the Tufts Family, she was seriously injured. John and Georgiana Tufts were each charged with causing

or negligently allowing M1's injuries to occur and she was removed from the custody of the Tufts Family.

54. The R Parents have since readopted M1 and she is living with them in Utah.

The Department's Findings Concerning Adoptions in Poland and Texas.

55. The Department mistakenly found that "EAC violated … §96.50(d) and (e) and §96.52(a) [of the Regulations] and the COA Reporting Requirements by failing to remove M[1] from her placement with the [R Parents] once they indicated their intent not to parent M[1];" and by failing "to report the disruption of the [R Parents] adoption in Poland" when it failed to immediately report that the adoption of M1 had been "disrupted" on June 21, 2015 because Anna R had indicated that the R Parents had decided not to adopt M1 on that date.

56. The foregoing determination is arbitrary, capricious and an abuse of discretion and contrary to fact and law for the following reasons:

    a. The uncontested evidence is that as of the end of the day on June 26, 2015, the R Parents had not decided to terminate the adoption of M1;

    b. The Department misapplied the definition of a "disruption" which is limited to an interruption or breach of custody prior to the completion of an adoption.

    c. A disruption is defined as "the interruption of a placement for adoption during the post-placement period" (22 CFR § 96.2) and M1's post-placement period ended with her adoption by the R Parents, at the latest on June 27, 2015 under the adoption decree issued by the Polish court.

    d. No disruption in the placement of M1 ever occurred because the R Parents never relinquished or attempted to relinquish custody of M1 prior to June 27, 2015 and the placement of M1 with the R Parents was not interrupted.

e.  M1 remained in the custody of the R Parents at all times from May 2015 until they departed Poland with M1 on July 3, 2015; and

f.  The decision is otherwise contrary to the facts or record and applicable laws and regulations.

57. The Department erred in finding that "EAC should have removed M[1] ... and stopped the adoption from finalizing in Poland" because EAC had no authority or facility to "remove M[1]" from the lawful custody of the R Parents or to "stop the adoption from finalizing." Even if such authority and facility were available, under the circumstances at the time, any such action would have been contrary to the intent and desire of the R Parents and may not have been in the best interest of M1.

58. The Department's determination that EAC should have "removed M1" and "stopped the adoption" is arbitrary, capricious and an abuse of discretion and contrary to fact and law for the following reasons:

a.  EAC followed the Department's own regulations, including §96.50(c), for responding to a crisis in an adoption placement by providing or arranging for counseling for the R Parents;

b.  There is no Regulation requiring an agency to "remove" a child from its lawful custodians, or to "stop an adoption", or to attempt to overturn a binding order issued by a foreign court;

c.  The R Parents had not made a final decision not to adopt M1 as of June 27, 2015;

d.  The R Parents were at all times prior to the completion of the adoption of M1 the lawful custodians of M1 and were the lawful parents of M1 after the adoption. EAC had no

authority or ability, legal or otherwise, to "remove M1" from the R Parents or to "stop the adoption;" and

e.  The determination is otherwise contrary to the facts or record and applicable laws and regulations.

59. The Department determined that the February 24, 2016 adoption of M1, a U.S. citizen, in a Texas court, by the Tufts Family, two U.S. citizens, upon relinquishment of parental rights by the R Parents, two U.S citizens, was not a domestic adoption subject to the laws of Texas and the United States, but instead was an intercountry adoption subject to the IAA and the Regulations.

60. The Department mistakenly found that the adoption of M1 by the Tufts Family in Texas in February, 2016 was an international adoption subject to the IAA because a) M1 was "habitually resident" in Poland, b) the Tufts Family and the R Parents were "habitually resident" in the United States, and c) the Hague Convention applies "where a child habitually resident in one Contracting State ("the State of origin") has been, is being, or is to be moved to another Contracting State ("the receiving State") either after his or her adoption in the State of origin by spouses or a person habitually resident in the receiving State, or for the purposes of such an adoption in the receiving State or in the State of origin."

61. The determinations referenced in paragraphs 59 and 60 are erroneous, arbitrary, capricious and an abuse of discretion and contrary to fact and law for the following reasons:

a.  The Department applied the Hague Convention, which is not the law of the United States, and ignored the IAA, which is the law of the United States;

b.  By its terms, the IAA is only applicable to a "convention" adoption, which is defined as "an adoption of a child resident in a foreign country party to the Convention by a

United States citizen, or an adoption of a child resident in the United States by an individual residing in another Convention country." 42 U.S.C. §14902(10);

c. The "habitual resident" standard from the Hague Convention was specifically excluded by Congress in adopting the IAA;

d. The IAA only applies to international or "convention" adoptions, not as the case here, to an adoption in Texas of a U.S. citizen and resident of Texas by two U.S. citizens and residents of Texas; and

e. The decision is otherwise contrary to the facts or record and applicable laws and regulations.

62. The subsequent adoption of M1, after she become a United States Citizen on July 3, 2015 (at the latest), cannot be governed by the IAA because it only applies to international or "convention" adoptions, not those of a U.S. citizen by a U.S. citizen in the U.S. Accordingly, the subsequent adoption of M1 after July 3rd by the Tufts Family is beyond the purview of the Department and the Regulations and is governed by the laws of Texas.

63. Regarding the February 2016 adoption of M1 in Texas, the Department found that EAC violated §96.47 of the Regulations "when [EAC] failed to ensure a home study on the Tufts was completed prior to the placement of M[1] with the Tufts," §96.52(b) "when it failed to timely transmit the home stud' to M's country of origin, Poland," §96.48 by failing to provide training to the Tufts Family; and §96.39(c) by giving preferential treatment to employees with respect to the placement of children for adoption.

64. The determinations referenced in paragraph 63 are based on the erroneous finding that M1's subsequent adoption by the Tufts Family in Texas, was a "convention adoption" governed by the IAA.

65. The determinations referenced in paragraph 63 are based on the erroneous finding that the Tufts' adoption of M1 was arranged by EAC, when in fact, the Tufts Family adoption of M1 was a domestic Texas adoption that was arranged by the R Parents and Eric Freeby, an adoption attorney retained by the Tufts with a home study performed by an independent licensed Texas agency.

66. All findings with respect to the adoption of M1 in Poland and her subsequent adoption in Texas relied on by the Department in debarring EAC are controverted by the evidence presented at the Hearing, are based on contradicted hearsay and are contrary to applicable laws and regulations.

67. Each and every finding made by the Department relating to the adoption of M1 by the R Parents in Poland and the temporary custody and adoption of M1 by the Tufts Family in Texas and relied by the Department in debarring EAC was based on hearsay that was contradicted by other evidence.

68. Each and every finding made by the Department with respect to the adoption of M1 in Poland by the R Parents and the temporary custody and adoption of M1 by the Tufts Family in Texas and relied on by the Department in debarring EAC was arbitrary, capricious and an abuse of discretion.

69. Each and every finding made by the Department with respect to the adoption of M1 by the R Parents in Poland, and the temporary custody and adoption of M1 by the Tufts Family in Texas and relied by the Department in debarring EAC was contrary to laws and applicable regulations.

70. The Department misapplied the burden of proof in all findings of fact with respect to the adoption of M1 by the R Parents in Poland and the temporary custody and adoption of M1 by the Tufts Family in Texas and otherwise denied EAC due process of law.

Facts Related to Uganda Activities.

71. In debarring EAC with regard to Uganda activities, the Department relied on a series of erroneous findings that are controverted by evidence presented at the Hearing, are based on hearsay, often double and triple hearsay, and are contrary to applicable laws and regulations.

72. The Department mistakenly determined that an attorney licensed in Uganda providing legal services to EAC and separately to EAC families in Uganda, Dorah Mirembe ("Mirembe"), and her associates were acting as "supervised providers" of EAC and provided adoption services on EAC's behalf.

73. Mirembe and her associates were not "supervised providers" of EAC and did not provide "adoption services" to EAC, as defined in the Regulations, with respect to acts and omissions relied on by the Department in its decision to debar EAC.

74. In her capacity as counsel for prospective adoptive parents, and as an officer of the court, Mirembe was acting beyond the supervision and control of EAC and with professional responsibility to adoptive families, not EAC.

75. While representing adoptive parents in Uganda court proceedings and before the consular officials at the U.S. Embassy in Uganda, among other actions, Mirembe was acting as counsel for adoptive parents, independent from and not subject to the control of EAC.

76. The Department's findings that Mirembe was an EAC supervised provider rendering adoption services on behalf of EAC are controverted by the only evidence presented at the Hearing are based on contradicted hearsay and are contrary to law.

77. In the Decision, the Department mistakenly found that EAC violated §96.35(a)(2) of the Regulations because it failed to adequately supervise Mirembe, one of EAC's "providers," and "to ensure that Ms. Juwan had given informed consent to the adoption of her daughter N," and that this violation supports the debarment action undertaken by the Department.

78. "Ms. Juwan" is one Serina Juwan, the biological parent of her daughter, N, for whom the Uganda High Court in Kampala awarded guardianship to Adam and Jessica D (the "D Family") for the purpose of emigration to the United States and subsequent adoption.

79. The Department's findings concerning Ms. Juwan are arbitrary, capricious and an abuse of discretion, contrary to law and in violation of EAC's right to due process because the Department never alleged that EAC failed "to ensure that Ms. Juwan had given informed consent to the adoption of her daughter N" in the Notice or in the Written Submission and the first time the assertion appears is in the Decision.

80. Under the Regulations, EAC was not required "to ensure that Ms. Juwan had given informed consent to the adoption of her daughter N."

81. Instead, under §96.46(c) of the Regulations, EAC was required to "verify, through review of the relevant documentation and other appropriate steps, that: (1) Any necessary consent to termination of parental rights or to adoption obtained by the foreign provider was obtained in accordance with applicable foreign law and Article 4 of the Convention."

82. The Department's findings are contradicted by the findings of the Uganda High Court that Ms. Juwan consented to the termination of her parental rights. The Order from the High Court of Uganda terminating Ms. Juwan's parental rights and granting guardianship of N to the D Family is evidence that Ms. Juwan's "consent to termination of parental rights [and] to

adoption" of N by the D Family was obtained in accordance with Ugandan law and Article 4 of the Convention.

83. Reliable evidence was presented at the Hearing that Ms. Juwan did in fact, give "informed consent" to the adoption of N, that her consent to N's adoption was obtained in accordance with §96.46(c) of the Regulations and that the Department itself verified that Ms. Juwan's consent to N's adoption was obtained in accordance with §96.46(c) of the Regulations.

84. Vice Consul Thomas Hayes of DOS's Kampala Embassy appeared as a live witness, supported by his contemporaneously written Case Notes, and testified that Ms. Juwan acknowledged a) that she willingly consented to N's adoption by the D Family by telling Hayes that she "wants to give her child [N] up for adoption because she cannot provide for her," and that "even if someone gave her money, she would not want the child," b) upon being shown her irrevocable release of parental rights by Hayes that she put her mark on it and agreed with it, that that she understood she was giving up her parental rights and that she understood "the D Family would never have to let her see the child again," and c) that she had another child "but the orphanage would only take one, she wanted them to take both."

85. Mr. Hayes testified that his Case Notes accurately reflected the statements Ms. Juwan made to him in the consular interview.

86. The Department made numerous other findings of fact and conclusions of law with respect to guardianships/adoptions in Uganda that were plainly erroneous including, but not limited, to the following:

   a. The finding that EAC violated §96.41(e) of the Regulations when it "retaliated" against N and Ms. Juwan for complaints Jessica D made to DOS, COA and Uganda authorities about EAC and Mirembe when such determinations was not supported by any evidence;

b.  The finding that Ms. Mirembe was acting on behalf of EAC, which was made without any evidence that EAC had anything to do with the alleged retaliation, or without any evidence that EAC or Mirembe even knew about Jessica D's complaints prior to the Department's Notice, when there is evidence that the so-called "retaliation" was in reality a Uganda police investigation concerning the D Family's abandonment of N in Uganda;

c.  The finding that EAC violated §§ 96.14, 96.44 and 96.46 of the Regulations when it failed to "independently" verify that Ms. Juwan gave informed consent to relinquish her parental rights and to the D Family's adoption of N, when in fact: (1) the Uganda High Court determined that Ms. Juwan relinquished her parental rights under Uganda law, and (2) Ms. Juwan testified before Officer Hayes that she voluntarily and knowingly relinquished her parental rights;

d.  The finding that EAC violated §§ 96.50 and 96.52(a) of the Regulations by failing to report a "disruption" of an adoptive placement by Sarah H to unnamed Ugandan officials, the State Department and COA when EAC was not obligated to make any such report and when all relevant facts concerning the involved child were timely reported to the Uganda High Court, the "Central Authority" in Uganda for purposes of the Regulations and the IAA;

e.  With respect to the allegations concerning the Shawn and Stacey W (the "W" Family) the Department's Notice and written submission alleged that EAC failed to fully advise the W Family of all the available background information concerning adopted child Vi because EAC failed to disclose to the W Family that Vi had a sister An. When EAC proved conclusively that An was not Vi's sister, DOS in the Decision arbitrarily and improperly

changed its basis for debarment and alleged instead that EAC failed to disclose "issues regarding Vi's behavior";

f.  Prior to the Hearing and the Decision, the Department of State never alleged that EAC violated §96.49(f) and (j) of the Regulations by failing to disclose that there were "issues regarding Vi's behavior," and the first time the assertion appears is in the Decision, so that allegation could not have been a part of the basis for the debarment;

g.  The finding that EAC failed to disclose "issues with Vi's behavior" to the W Family, when information about the alleged "issues" was either not available to EAC, not confirmed, not pertinent or based only on hearsay and speculation;

h.  The finding that Mirembe, acting as EAC's "supervised provider" and "agent," allegedly advised Travis and Jenna K (the" K Family") to lie to a consular officer when Mirembe was advising and representing the K Family as their attorney before the consular officer and was not under EAC's control and was not involved in providing adoption services;

i.  The finding that EAC violated §96.41(e) of the Regulations when Ms. Mirembe allegedly advised the K family to lie to a consular officer, when there was no evidence that EAC had any involvement in or knowledge of the representations Mirembe made, where to support the violation, the Hearing Officer arbitrarily accepted some unsworn statements of Jenna K as true while finding and others as untrue or exaggerated, and where the Department's allegations regarding the K family, whether true or false, are not violations of §96.41(e);

j.  The finding that EAC violated "section 42 U.S.C. 14944(a)(2)-(3) by making false statements and misrepresenting material facts to … the Ugandan court, when Mirembe allegedly submitted backdated, fraudulent documents" to the Court, while serving as counsel to Joseph and Christine Ro (the "Ro Family"), notwithstanding the facts that:

    i.   Representing persons pursuing guardianship in a Ugandan court is not an "adoption service" as defined in §96.2 of the Regulations;

    ii.   Mirembe was acting as an officer of the court and attorney for the Ro Family before the Ugandan court, not as a supervised provider or agent under the control of EAC;

    iii.   Mirembe did not submit fraudulent documents to a Ugandan court and the documents referred to by the Department were submitted to correct documents that were previously submitted, but found to have contained incorrect information that was provided by others;

    iv.   EAC did not submit any documents to the Ugandan court regarding the children and families of the children referred to the Ro Family; and

    v.   None of the "backdated, fraudulent documents" allegedly submitted to a Ugandan court were reviewed by the Department, produced for EAC to review or were submitted as evidence at the Hearing though Christine Ro indicated that she obtained and retained the "backdated, fraudulent documents."

    k.   The Department found that EAC violated §96.41(e) of the Regulations when an EAC employee, Debra Parris "threatened" Christine R, when the only evidence was that Parris at most commented on the potential consequences of actions undertaken.

87. Each and every finding made by the Department as a basis for EAC's debarment with respect to EAC's adoption related activities in Uganda was based on hearsay, often double and triple hearsay, that was contradicted by other evidence and was arbitrary, capricious and an abuse of discretion.

88. Each and every finding made by the Department as a basis for EAC's debarment with respect to EAC's activities in Uganda was contrary to applicable laws and regulations.

89. The Department misapplied the burden of proof in all of its findings of facts and conclusions of law relied on as a basis for EAC's debarment with respect to EAC's activities in Uganda.

90. Each and every finding made by the Department and relied on as a basis for EAC's debarment with respect to alleged supervised providers of EAC in Uganda was based on hearsay, usually double or triple hearsay, that was contradicted by other evidence.

91. The Department improperly applied the applicable law and regulations in making its findings that are the basis for EAC's debarment, made finding of violations of the Regulations based on matters that are not violations at all or were beyond EAC's control, and made findings of violations based on matters outside of the Regulations including, but not limited to, the visa process and actions of independent attorneys who were not acting at EAC's direction or under EAC's control.

92. EAC's debarment is contrary to law and in violation of EAC's right to due process because the Department debarred EAC and took adverse action against EAC on grounds that were never alleged in the Notice or in the Written Submission and which were asserted for the first time in the Decision.

## COUNT I
### (Violation of the Intercountry Adoption Act, 42 U.S.C. §§ 14901 *et seq.*)

93. Plaintiff realleges paragraphs 1 - 92 as if fully set forth herein.

94. Contrary to the provisions and requirements of 42 U.S.C. § 14924, the Department wrongfully debarred EAC for conduct that did not violate 42 U.S.C. § 14901 *et seq.*

95. The Department wrongly applied the IAA by imposing the IAA and the Regulations to domestic adoptions and by using that as the basis for its decision to debar EAC.

96. The Department wrongfully debarred EAC for conduct that did not violate the IAA.

97. The Department acted contrary to the provisions and requirements of the IAA because the decision to debar EAC is based on arbitrary and capricious findings of fact that constitute an abuse of discretion.

98. The Department acted contrary to the provisions and requirements of the IAA because its decision to debar EAC is not in accordance with applicable law and in particular:

    a. The Department's decision to debar EAC is based on controverted hearsay, which cannot be the basis for the Department's holding;

    b. The Department wrongfully determined that certain persons were EAC "supervised providers" and wrongfully held EAC accountable for the alleged actions of those individuals;

    c. The Department wrongfully determined that Mirembe was an "agent" of EAC and wrongfully held EAC responsible for the actions allegedly undertaken by Mirembe;

    d. The Department wrongfully debarred EAC when it determined that certain events occurred and those events did not occur;

    e. The Department imposed the wrong burden of proof in numerous claims to EAC's detriment; and

    f. The Department's decision is contrary to the evidence and contrary to the applicable laws and regulations.

99. As a result of the foregoing, the Department improperly determined that there was substantial evidence the EAC was out of compliance with the IAA and its Regulations and that there has been a pattern of serious, willful or grossly negligent failures to comply or other aggravating circumstances indicating that continued accreditation or approval of EAC would not be in the best interests of children and families concerned, and based on that wrongfully debarred EAC.

**WHEREFORE,** Plaintiff respectfully requests that the Court set aside the debarment of EAC, award EAC its reasonable attorneys' fees and costs, plus interest, and grant such other relief as the Court deems just and proper.

**COUNT II**
**(Violation of the Intercountry Adoption Regulations, 22 C.F.R. Part 96)**

100.    Plaintiff realleges paragraphs 1 - 99 as if fully set forth herein.

101.    Contrary to the provisions and requirements of §96.85 of the Regulations, the Department wrongfully debarred EAC for conduct that did not violate the Regulations.

102.    The Department acted contrary to the provisions and requirements of the Regulations by imposing the requirements of the Regulations on domestic adoptions and by using that as the basis for its decision to debar EAC.

103.    The Department acted contrary to the provisions and requirements of the Regulations because the decision to debar EAC is based on arbitrary and capricious findings of fact that constitute an abuse of discretion.

104.    The Department acted contrary to the provisions and requirements of the Regulations because its decision to debar EAC is not in accordance with applicable law and in particular:

   a.  The Decision to debar EAC is based on controverted hearsay, which cannot be the basis for the State Department's holding;

   b.  The Department wrongfully determined that certain persons were EAC "supervised providers" and wrongfully held EAC accountable for the alleged actions of those individuals;

   c.  The Department wrongfully determined that Mirembe was an "agent" of EAC and wrongfully held EAC responsible for the actions allegedly undertaken by Mirembe;

   d.  The Department wrongfully debarred EAC when it determined that certain events occurred and those events did not occur;

   e.  The Department imposed the wrong burden of proof in numerous claims to EAC's detriment; and

   f.  The Department's decision is contrary to the evidence and contrary to applicable laws and regulations.

105.    As a result of the foregoing, the Department improperly determined that there was substantial evidence the EAC was out of compliance with the Regulations and that there has been a pattern of serious, willful or grossly negligent failures to comply or other aggravating

circumstances indicating that continued accreditation or approval of EAC would not be in the best interests of children and families concerned, and based on that wrongfully debarred EAC.

**WHEREFORE,** Plaintiff respectfully requests that the Court set aside the debarment of EAC, award EAC its reasonably attorneys' fees and costs, plus interest, and grant such other relief as the Court deems just and proper.

## COUNT III
### (Violation of the Administrative Procedure Act, 5 U.S.C. 701 §§ *et seq.*)

106.    Plaintiff realleges paragraphs 1 - 105 as if fully set forth herein.

107.    The debarment of EAC constitutes a final agency action.

108.    The debarment violates the APA because the decision to debar EAC is arbitrary, capricious, an abuse of discretion and not supported by the evidence, and contrary to applicable law; in particular:

    a.  The Department improperly applied the IAA to a domestic adoption and relied on this conduct as the basis to debar EAC;

    b.  The Department improperly applied the Regulations to a domestic adoption and relied on this conduct as the basis to debar EAC;

    c.  The Department applied the incorrect burden of proof to its numerous claims against EAC;

    d.  The Department incorrectly relied on controverted hearsay evidence as the basis of its decision to debar EAC;

    e.  The Department incorrectly found that certain individuals were EAC "supervised providers" and relied on the alleged conduct of those individuals as the basis to debar EAC;

    f.  The Department incorrectly found that Mirembe was an "agent" of EAC and relied on the alleged conduct of Mirembe as the basis to debar EAC;

    g.  The Department incorrectly determined that certain events occurred that did not occur and relied on those events as the basis to debar EAC;

    h.  The Department made findings that are inconsistent with the IAA and the Regulations and used those findings as the basis to debar EAC;

    i.  The Department made findings inconsistent with its own published guidelines;

j.  The Department acted in excess of its statutory authority by improperly applying the IAA and the Regulations to facts beyond the Department of State's purview and relying upon those facts as a basis to debar EAC;

k.  The Department's findings and conclusions are arbitrary, capricious, an abuse of discretion and are otherwise not supported by substantial evidence;

l.  The Department failed to produce and permit EAC cross examination of witnesses whose allegations form the basis to the Department's claims against EAC, including but not limited to, facts pertinent to testimony of Department employees were withheld as privileged;

m.  The Department improperly relied on alleged acts that were not alleged either in the Notice or Written Submission, but were first alleged in the Decision, which cannot be the basis for debarment; and

n.  The Department improperly withheld evidence from EAC prior to the Hearing and only produced the most important documents to EAC on the eve of the Hearing in voluminous document production.

109. The action of the Department in debarring EAC violates the APA because the Department acted in excess of its statutory authority by applying the IAA and the Regulations to domestic adoptions.

110. The action of the Department in debarring EAC violates the APA by depriving EAC of its fundamental due process rights.

111. The action of the Department in debarring EAC violates the APA because it does not observe basic procedure required by law.

**WHEREFORE**, Plaintiff respectfully requests that the Court set aside the debarment of EAC, award EAC its reasonable attorneys' fees and costs, plus interest, and grant such other relief as the Court deems just and proper.

## COUNT IV
### (Violation of the Article of the United States Constitution – Due Process.)

112. Plaintiff realleges paragraphs 1 - 111 as if fully set forth herein.

113. The Department has violated the Due Process Clause of the Fifth Amendment by wrongfully depriving EAC of its accreditation to conduct international adoptions.

114.   The Department's debarment of EAC violated the Due Process Clause of the United States

Constitution and denied EAC its fundamental due process rights because it denied EAC

fundamental fairness and impartiality, and because the action is otherwise contradicted by

applicable law and in particular:

   a.   The Department failed to prove that EAC engaged in conduct warranting debarment
        despite its burden of proof to do so;

   b.   The Department acted in excess of its statutory authority by improperly applying the
        IAA and the Regulations to facts beyond the Department's purview and relying upon
        those facts as a basis to debar EAC;

   c.   The Department's findings and conclusions are arbitrary, capricious, an abuse of
        discretion and are otherwise not supported by substantial evidence;

   d.   In concluding to debar EAC, the Department relied almost entirely on multiple layers
        of hearsay and the Department adduced and presented virtually no direct evidence at
        the Hearing and otherwise;

   e.   In making its debarment decision the Department improperly relied on controverted
        hearsay evidence as the basis of its determinations;

   f.   The Department failed to produce and permit EAC cross examination of witnesses
        whose allegations form the basis to the Department's claims against EAC, including
        but not limited to, facts pertinent to testimony of Department employees were withheld
        as privileged;

   g.   The Department improperly relied on alleged acts that were not alleged either in the
        Notice or Written Submission, but were first alleged in the Decision, which cannot be
        the basis for the debarment;

   h.   EAC could not inquire into, address or rebut violations that first appeared in the
        Department's decision to uphold the Debarment and therefore EAC was denied due
        process; and

   i.   The Department improperly withheld evidence from EAC during discovery and only
        produced the most important evidence to EAC on the eve of trial in voluminous
        document production.

**WHEREFORE**, Plaintiff respectfully requests that the Court set aside the debarment of

EAC, award EAC its reasonable attorneys' fees and costs, plus interest, and grant such other

relief as the Court deems just and proper.

By: _____/s/_____
John D. Quinn, Esq.
D.C. Bar No. 267302
Steven Sale, Esq.
D.C. Bar No. 942243
SALE & QUINN, P.C.
1629 K St., N.W., Suite 300
Washington, D.C. 20006
301 N. Fairfax Street, Suite 206
Alexandria, VA 22314
Telephone: (202) 833-4170
Facsimile: (202) 887-5137
quinnj@salequinn.com

*Attorney for European Adoption
Consultants Incorporated.*

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

By: _____/s/_____
John D. Quinn, Esq.
D.C. Bar No. 267302
Steven Sale, Esq.
D.C. Bar No. 942243
SALE & QUINN, P.C.
1629 K St., N.W., Suite 300
Washington, D.C. 20006
301 N. Fairfax Street, Suite 206
Alexandria, VA 22314
Telephone: (202) 833-4170
Facsimile: (202) 887-5137
quinnj@salequinn.com